# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

VICKI SUE MCGHEE
fka VICKI HILL

Debtor

Case No. 3:19-bk-32534-SHB
Chapter 7

JOHN P. NEWTON, TRUSTEE

Plaintiff

v.

Adv. Proc. No. 3:20-ap-3022-SHB

ALI MCGHEE-ROSENBURGH

Defendant

## **M E M O R A N D U M**

**APPEARANCES**:  LAW OFFICES OF MAYER & NEWTON
John P. Newton, Jr., Esq.
1111 Northshore Drive
Suite S-570
Knoxville, Tennessee 37919
Attorneys for Plaintiff

WAYNE R. STAMBAUGH, ESQ.
Post Office Box 1896
Morristown, Tennessee 37816
F. CLINTON LITTLE, ESQ.
1111 Northshore Drive
Suite P-295
Knoxville, Tennessee 37919
Attorneys for Defendant

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff initiated this adversary proceeding on June 1, 2020, by filing a Complaint [Doc. 1], seeking to avoid a prepetition transfer from Debtor to Defendant under 11 U.S.C. § 547, together with post-judgment interest, to be preserved for the benefit of Debtor's bankruptcy estate pursuant to 11 U.S.C. § 551.  The trial of this adversary proceeding was held March 1, 2021.  The record before the Court consists of the Amended Joint Pretrial Statement containing stipulated facts [Doc. 25]; twenty-six exhibits stipulated into evidence [Doc. 20]; the testimony of Plaintiff by declaration, as amended [Doc. 30]; and pursuant to Rule 43(a) of the Federal Rules of Civil Procedure, applicable to this adversary proceeding through Federal Rule of Bankruptcy Procedure 9017, the testimony[1] of Jessee Bundy,[2] Debtor, and Defendant.  The Court also takes judicial notice of facts and dates of record in Debtor's underlying bankruptcy case.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), and this Memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure (incorporating therein Federal Rule of Civil Procedure 52).

## I. FACTS

Defendant obtained a judgment in the amount of $15,000.00 plus 5.25% interest against Debtor and Steven McGhee,[3] jointly and severally, on July 8, 2016, in *McGhee-Roseburgh v.*

---

[1] Pursuant to Rule 43(a) of the Federal Rules of Civil Procedure, made applicable here by Rule 9017 of the Federal Rules of Bankruptcy Procedure, the Court found that good cause in compelling circumstances to allow the trial to be conducted remotely through means of a videoconferencing solution, and the parties further consented to a remote trial. [Doc. 18.]

[2] Ms. Bundy is an attorney employed by Melrose Title Company.  She was not involved in the closing at issue in this adversary proceeding, and her testimony was based solely on her review of Debtor's file and Melrose Title Company's general procedures.

[3] Debtor is Defendant's sister [Doc. 25 at ¶ 10], and Steven McGhee is Defendant's brother.

*McGhee*, Knox County General Sessions Court Docket No. 71400H (the "Judgment"), and Defendant recorded the Judgment with the Knox County Register of Deeds on December 21, 2016, thus creating a judgment lien against Debtor's real property. [Ex. 2; *see also* Doc. 25 at ¶ 3.] On July 24, 2018, Debtor closed on the sale of her residential real property located at 118 Gardner Lane, Powell, Tennessee ("Gardner Lane Property"), to Logan and Emilee James for $142,500.00. [Doc. 25 at ¶ 4; Ex. 3.] As reflected on the settlement statement, the following were paid at closing: taxes of $231.96 to Knox County; fees totaling $367.50 (an archive fee of $12.50, a closing fee of $175.00, a courier fee of $45.00, and a document preparation fee of $135.00) to the closing agent, Melrose Title Company; commissions totaling $7,125.00; and a first mortgage debt owed to AmeriFirst Home Mortgage of $86,953.21, with the remaining sale proceeds totaling $47,822.33 to Debtor. [Ex. 3]. A Warranty Deed for the Gardner Lane Property was recorded with the Knox County Register of Deeds on July 30, 2018. [Ex. 4.]

When Defendant discovered that the title company had closed the sale without satisfying her judgment lien, her attorney contacted Melrose Title Company, which in turn, through Ms. Bundy contacted Debtor. Ms. Bundy explained the terms of the compliance agreement that Debtor had signed with Melrose Title Company, the purpose of which was to ensure that Debtor would agree to cooperate with Melrose Title Company to cure any error discovered after closing. Ms. Bundy advised Debtor that her failure to cooperate could lead to a lawsuit against her to clear the title to the Gardner Lane Property. Debtor initially resisted paying any amount to Defendant, but after "many phone calls to motivate [Debtor] to pay without further legal action," Debtor finally executed an Escrow Agreement on August 13, 2018, which states:

> WHEREAS, it has come to the attention of the parties post-closing that a lien exists against Steven M. McGhee and Vickie S. McGhee in favor of Ali McGhee-Roseburgh filed as Instrument No. 201612210039735 in the Register's Office for Knox County, Tennessee which attaches to the Property.

> WHEREAS, in order to clear the lien and convey good title, Vickie has agreed to deposit funds [in] the amount of $16,672.00 pursuant to the instructions of F. Clinton Little, Attorney for the Plaintiff, who has affirmed said amount will satisfy the lien and judgment in full.
>
> WHEREAS, Escrow Agent [Melrose Title Company] has agreed to hold said funds and disburse to F. Clinton Little by hand-delivered check from Escrow Agent or in other manner specified in writing following the delivery of a properly executed and notarized full release of judgment lien signed by both Ali McGhee-Roseburgh and F. Clinton Little to Escrow Agent to be filed in the Knox County Register's Office.

[Ex. 9.]

In accordance with the Escrow Agreement, Debtor tendered cashier's checks (funded from Debtor's closing proceeds) made payable to Melrose Title Company. The first check in the amount of $16,072.00, dated August 13, 2018, noted the following:

> RE: STEVEN M MCGHEE & VICKI S MCGHEE
> DOCKET NUMBER 71400H – PAYMENT IN FULL
> ALI MCGHEE – ROSEBURGH

[Doc. 25 at ¶ 5; Ex. 5]. A second check to Melrose Title, in the amount of $600.00, was dated August 22, 2018 and noted:

> RE: STEVEN M MCGHEE & VICKI S MCGHEE
> DOCKET # 71400H– ADDITIONAL PAYMENT
> FINAL PAYMENT
> Ali McGhee-Roseburg

[Doc. 25 at ¶ 5; Ex. 6]. Melrose Title Company paid the entire $16,672.00 to Defendant's attorney, F. Clinton Little, who deposited the funds into his trust account before disbursing them to Defendant in satisfaction of the Judgment. [Doc. 25 at ¶¶ 5-6; Exs. 5, 6.] Defendant executed a Full Release of Judgment Lien, which was recorded on August 29, 2018. [Doc. 25 at ¶ 7; Ex. 11.]

Debtor filed the Voluntary Petition to commence her Chapter 7 bankruptcy case on August 8, 2019, and received a discharge on December 23, 2019. [Doc. 25 at ¶ 1; Ex. 1.]

Plaintiff was appointed as Chapter 7 Trustee, and on June 1, 2020, he filed this adversary proceeding to avoid the entire $16,672.00 paid to Defendant in August 2018 as a preferential transfer to an insider of Debtor. [Doc. 25 at ¶¶ 2, 9.]

According to the Amended Joint Pretrial Statement filed by the parties on February 24, 2021, the issues before the Court are:

> 1. Whether the Trustee is entitled to avoid the transfer by payment to the Defendant in the amount of $16,672.00 as a preference pursuant to 11 U.S.C. § 547(b)[.]
>
> 2. If avoided, what is the amount the Trustee can preserve for the estate including any statutory interest?
>
> 3. Whether the date for the transfer of funds should relate back to the execution of the warranty deed dated July 30, 2018 which would be outside the one year provision found in 11 U.S.C. § 547(b)[.]
>
> 4. Whether the defenses raised in the Answer by the Defendant under 11 U.S.C. § 547(c) including payment of a secured debt result in a dismissal of the claim to avoid[.][4]

---

[4] Although the issues, which were filed jointly, include mention of a § 547(c) defense, the Answer, in fact, does not include any affirmative defenses and instead, expressly states only the following:

> 1. The allegations contained in Section I (paragraphs 1 – 5) of the Complaint are admitted.
>
> 2. The allegations of Section II (paragraphs 6-7) are admitted.
>
> 3. The allegations of Section II (paragraphs 8-13) are denied and strict proof is demanded thereof.
>
> 4. All remaining allegations and prayers for relief not previously admitted, denied or qualified are hereby denied as is specifically set forth hereafter, and strict proof is demanded thereof.

[Doc. 5.]

In her pretrial brief, Defendant identified the following two issues: "1. Whether [Defendant] should be considered an 'insider' pursuant to 11 U.S.C. § 547(B) [*sic*] due to her familial relationship with the debtor of a judgment creditor [and] 2. [w]hether the date for the transfer of funds between the debtor and the defendant should relate back to the execution of the warranty deed dated July 30, 2018 due to the intentional misrepresentation of the debtor which would be outside the one year provision found in 11 U.S.C. § 547(b)." [Doc. 24 at p. 2.] Defendant argued in her pretrial brief that she was not an insider as defined by the Bankruptcy Code because of her estrangement from Debtor and their contentious relationship. Concerning her relation-back argument, Defendant argued only that "if [Debtor] had been honest with Melrose Title Company regarding her legal name the judgment would have been paid July 20, 2018 and would be outside the one year provision of 11 U.S.C. § 547 (b) [*sic*]." [*Id.* at p. 6.] Before trial, the Court rejected Defendant's argument that the Court should not deem her an insider under § 547 because the Bankruptcy Code does not look to the nature of the relationship but defines "insider" as, "if the debtor is an individual[,] [a] relative of the debtor[,]" 11 U.S.C. § 101(31)(A). Defendant unquestionably is a relative of Debtor.

[Doc. 25.]

Based on the evidence presented and the issues that were raised and argued at trial, the Court directed the parties to file post-trial briefs discussing the "new value" statutory defense provided by 11 U.S.C. § 547(c)(1). Defendant filed her post-trial brief on March 15, 2021, and Plaintiff filed his post-trial brief on March 19, 2021. [Docs. 32, 33.] In his brief, Plaintiff argues that Defendant did not raise any affirmative defenses and, therefore, waived them, including § 547(c)(1)'s "new value" statutory defense.

## II. ANALYSIS

Plaintiff's cause of action arises under 11 U.S.C. § 547(b), which allows him, as Chapter 7 Trustee, to avoid the transfers totaling $16,672.00 from Debtor to Defendant if he can prove the following statutory elements: (1) the transfers were made within the year before Debtor filed her case (because Defendant, as the sister of Debtor, is an insider[5]); (2) the transfers were made for the benefit of Defendant on account of an antecedent debt; and (3) Debtor was insolvent when she made the transfers, which (4) enabled Defendant to receive more than she would have received in this Chapter 7 liquidation case had she not received the $16,672.00 prepetition. Under subsection (f), Debtor "is presumed to have been insolvent on and during the 90 days immediately preceding" the petition date; otherwise, under subsection (g), Plaintiff, as the trustee alleging the preferential transfer, has the burden of proving each element of subsection (b) by a preponderance of the evidence. Nevertheless, even if Plaintiff meets the burden of proof under subsection (b), the transfers may not be avoided if one of the statutory defenses in subsection (c) was properly raised and applies.

The parties do not dispute that Debtor made transfers totaling $16,672.00 to Defendant,

---

[5] See 11 U.S.C. § 101(31)(A)(i).

who is an insider under the statutory definition, within the year before Debtor filed for bankruptcy. There was no evidence presented to rebut the statutory presumption that Debtor was insolvent when she made the transfers, and there is no dispute that the transfers paid off Defendant's judgment lien, which was on account of an antecedent debt. Finally, there is no dispute that once Defendant received payment in satisfaction of her judgment lien, she was placed in a better position in Debtor's Chapter 7 bankruptcy case than she would have been had she not received the $16,672.00 because when Debtor sold the Gardner Lane Property, although Defendant's lien continued in the Property in the hands of the purchaser, Debtor's obligation to Defendant became wholly unsecured with no statutory priority over any other unsecured debt. Thus, Plaintiff has proved every element of § 547(b), and the sole issue for this Court's determination is whether Defendant properly pled and proved that one of the statutory affirmative defenses of subsection (c) applies.

### A.  Waiver of Affirmative Defenses of 11 U.S.C. § 547(c)

As required by Federal Rule of Civil Procedure 12(b), which applies to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7012, "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required." *See also* Fed. R. Civ. P. 8(c), applicable to this adversary proceeding by Fed. R. Bankr. P. 7008 ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense . . . ."). Generally, a party's failure to timely assert an affirmative defense, including an affirmative defenses under § 547(c), results in a waiver of the defense. *See Old Line Life Ins. Co. of America v. Garcia*, 418 F.3d 546 (6th Cir. 2005); *see e.g., Seaver v. Lindback (In re White)*, 557 B.R. 736, 741 (Bankr. D. Minn. 2016) (holding that waiver resulted from the failure to raise the "ordinary course of business" defense afforded by § 547(c)(2)). Although the failure to raise an affirmative

defense in the responsive pleading does not always result in waiver, the question balances on whether the plaintiff had a fair opportunity to respond or is prejudiced. *See Stupak-Thrall v. Glickman*, 346 F.3d 579, 585 (6th Cir. 2003).

Defendant's Answer is devoid of any reference to any affirmative defense, including "new value" under subsection (c)(1). Although the Amended Joint Pretrial Statement includes a reference to § 547(c) as an issue [*see* Doc. 25 at p. 1], it does not identify any specific defense, including the "new value" defense, and it incorrectly states that defenses were raised in the Answer. Furthermore, Defendant did not raise or argue the "new value" or any other § 547(c) defense in her pretrial brief filed on February 23, 2021. Instead, Defendant argued that she should not be considered an "insider" because of her estranged relationship with Debtor and that, because Debtor made misrepresentations to Melrose Title Company about her name, the date of the transfers should relate back to July 30, 2018, when the warranty deed was executed [*see* Doc. 24 at pp. 4-6]. The Court, accordingly, determines that Defendant waived the "new value" defense by failing to raise it in her Answer and pretrial brief.

Nevertheless, "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all aspects as if raised in the pleadings [and a] party may move – at any time, even after judgment – to amend the pleadings to conform them to the evidence and to raise an unpleaded issue[, b]ut failure to amend does not affect the result of the trial of that issue." Fed. R. Civ. P. 15(b)(2) (applicable in this adversary proceeding by Fed. R. Bankr. P. 7015). After the trial, based on the evidence presented and the closing arguments made by Defendant's counsel, the Court directed the parties to file post-trial briefs concerning whether the "new value" defense applied. In her brief, Defendant argued that the threat of legal action against Debtor by Melrose Title Company and/or the purchasers of the Gardner Lane

Property and her payment to settle any potential legal action was "new value" to Debtor [Doc. 32 at pp. 2-4]. In response, Plaintiff argued that Defendant did not raise any of the statutory affirmative defenses, including "new value," and he opposed any such consideration based on the proof presented at trial. As such, Rule 15(b)(2)'s requirement that the "new value" defense be "tried by the parties' express or implied consent" was not met, and any "new value" defense was waived by Defendant.

### B. The § 547(c)(1) "New Value" Affirmative Defense

The waiver and Rule 15(b)(2) determinations notwithstanding, even if the Court were to consider the "new value" defense, Defendant would still not be defeat Plaintiff's preference action. Under 11 U.S.C. § 547(c)(1), a transfer may not be avoided "to the extent that such transfer was – (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange."[6]

> Section 547(c)(1''s "contemporaneous exchange" defense "has three elements: (1) both the debtor and creditor must intend the transfer to be a contemporaneous exchange; (2) the exchange must, in fact, be contemporaneous; and (3) the exchange must be for new value." *Stevenson v. Leisure Guide of Am., Inc. (In re Shelton Harrison Chevrolet, Inc.),* 202 F.3d 834, 837 (6th Cir. 2000). "The classic exception to avoidance intended by Congress to be reflected in section 547(c)(1) is the exchange of goods or other 'value' for a check. Such transactions are generally intended to be cash transactions, although some extension of credit is necessarily involved until the check is negotiated." *Ray v. Sec. Mut. Fin. Corp (In re Arnett)*, 731 F.2d 358, 361 (6th Cir. 1984). Furthermore, "[a] vast majority of courts agree that 'new value' for purposes of § 547 must be something of tangible economic value. This view is in keeping with the purpose new value serves: replenishing the estate." *Phoenix Rest. Grp., Inc. v. Fuller, Fuller & Assocs., P.A. (In re Phoenix Rest. Grp., Inc.),* 316 B.R. 671, 679 (Bankr. M.D. Tenn. 2004) (citations omitted).

---

[6] The statute defines "new value" as "money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]" 11 U.S.C. § 547(a)(2).

*Walls v. Gruen Mktg. Servs., Inc. (In re Paradise Valley Holdings, Inc.)*, 347 B.R. 304, 309 (Bankr. E.D. Tenn. 2006).  In short, § 547(c)(1) protects transfers that do not result in a diminution of the bankruptcy estate because the estate is replenished by an infusion of assets roughly equal in value to those transferred, even if the transfer was between a third party and the debtor. *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 652 (B.A.P. 10th Cir. 2000).  The release of a lien comes within the definition, *Kenan v. Fort Worth Pipe Co. (In re George Rodman, Inc.)*, 792 F.2d 125, 127-28 (10th Cir. 1986), but "the mere satisfaction of an antecedent debt is not 'new value.'" *In re Moses*, 256 B.R. at 652.

> The "indirect transfer" defense theory is invoked when there is a nexus between the debtor's facially preferential payment to a creditor and the transfer of new value by a third party.  Reduced to its essence, a creditor-defendant raising this defense theory is asserting that when it received the payment from the debtor, it waived rights against or otherwise caused a third party to provide value to the debtor.  If the value the debtor received from the third party equaled the payment the debtor made to the creditor, there was no loss to the estate and § 547(c)(1) provides a defense to the preference claim. *E.g.,* 5 *Collier on Bankruptcy* ¶ 547.04[1][c] (16th ed. 2013); *see generally In re C.P.P. Export & Import, Inc.,* 132 B.R. 962, 965–66 (D. Kan. 1991) (§ 547(c)(1) provides a defense when "the debtor receives at least as much in new value as it transfers away").
>
> Commonly, the "indirect transfer" defense theory is asserted when: (1) the debtor owes a debt to its creditor; (2) the creditor has recourse in some form against the third party if the debtor defaults; and (3) after the creditor could exercise its rights against the third party, as a result of which the third party may invoke indemnification rights against the debtor.  ***A significant variable in this three (3) party relationship, insofar as the § 547(c)(1) defense is concerned, is whether the third party itself owes an obligation to the debtor giving rise to an ability to setoff its payment to the creditor against amounts that it may owe the debtor.*** This is illustrated in the examples below:
>
> > **Example 1 (preference payment results in indirect new value to debtor):**
> > As a result of the debtor's facially preferential payment, the creditor waives or otherwise does not assert its lien rights against the third party. The third party then does not invoke its setoff rights against the amounts it owes the debtor. Consequently, it pays the debtor's invoice in an amount at least equal to the preferential payment to the creditor.  That payment, in effect, "replaces" the payment the debtor made to the creditor and there is no net loss to the

> estate. *See, e.g., In re Gem Const. Corp. of Virginia,* 262 B.R. 638, 646 (Bankr. E.D. Va. 2000).
>
> **Example 2 (preference payment does not result in indirect new value to debtor):**
> Same facts as Example 1, except that the third party does not owe any money to the debtor, making setoff impossible. In this scenario, the third party is left with only a general unsecured claim against the debtor. The end result is that the third party's claim against the estate replaces the creditor's claim against the estate while the bankruptcy estate has been diminished by the amount of the preferential payment.

*Instrumentation & Controls, Inc., v. Ne. Union, Inc. (In re Instrumentation & Controls, Inc.)*, 506 B.R. 677, 679-80 (Bankr. E.D. Pa. 2014) (emphasis added); *see also In re WB Servs., LLC*, 590 B.R. 553, 565 (Bankr. D. Kan. 2018) ("If the value provided to the debtor equals or exceeds the amount of the preferential payment to the creditor, the estate is not diminished and § 547(c)(1) provides a defense.").

"In evaluating a § 547(c)(1) defense based on the 'indirect benefit' theory, the touchstone is the ultimate impact on the bankruptcy estate. In this regard, the asserted benefit provided to the estate by the third party must enhance the estate 'in real terms;' it must provide more than an 'esoteric or intangible' benefit." *In re Adelphia Automatic Sprinkler Co.,* 184 B.R. 224, 228 (E.D. Pa. 1995) (quoting *In re Aero–Fastener, Inc.,* 177 B.R. 120, 138 (Bankr. D. Mass. 1994)). The defendant must also "prove the specific measure of the new value given to the debtor." *In re Spada,* 903 F.2d 971, 976 (3d Cir.1990) (citations omitted).

In *In re J.A. Jones, Inc.*, 361 B.R. 94, 97-98 (Bankr. W.D.N.C. 2007), the court analyzed and explained the indirect transfer theory in connection with alleged preferential payments of general contractors that later became bankruptcy debtors to their subcontractors, which in exchange for the payments by the general contractors of the antecedent debt, executed releases of the subcontractors' rights to assert statutory liens. As the court noted, "[a]t the time of payment,

each defendant [subcontractor] possessed inchoate lien rights which were released in exchange for the[] payments." *Id.* at 98.[7]

There, the subcontractors argued that because they released their lien rights against the construction projects, they gave commensurate new value to the debtors. *Id.* at 102. They argued that the "indirect transfer" theory provided "that the release of the subcontractor's lien against the owner cause[d] a coincident release of the owner's claims against [the] debtor, thereby creating new value to the debtor." *Id.* A similar argument might have been made here by Defendant that her release of her judgment lien against the Gardner Lane Property caused a coincident release of the claim against Debtor by the third-party purchaser and/or Melrose Title Company.

The *In re J.A. Jones* court reviewed the objectively anticipated actions of the three parties involved.

> Section 547 requires us to hypothesize what the subcontractor would have received in bankruptcy had the allegedly preferential payment not been made. We cannot fairly assess how the subcontractor would have fared without projecting how it would have reacted to nonpayment. Since an individual subcontractor's reaction is unknowable, an objective approach should be employed, asking "what would a reasonable materialman have done in response to that nonpayment." It takes little commercial construction expertise to answer. A reasonable subcontractor would assert his legal rights, liening the project, perfecting those liens and forcing payment through the owner.
>
> We should also assume a reasonable behavior by the project owner. Again, this requires almost no imagination. With liens on this project, the owner would

---

[7] The court acknowledged that a prepetition payment to a subcontractor who was a secured creditor of the debtor is not preferential because such a creditor would be paid out of the collateral: "A pre-petition transfer on a secured debt eliminates one debtor asset (the transferred property), but simultaneously augments another (by increasing the debtor's equity in the collateral). Since no net depletion occurs, other creditors are not harmed, and the transfers are not avoidable." *Id.* at 99-100. As a threshold matter, Defendant here no longer held a secured claim against any property of Debtor at the time of the prepetition payment. Instead, Defendant's unreleased lien remained with the Gardner Lane Property, which was then owned by a third party. Thus, Defendant's claim against Debtor at the time of the preference payment was wholly unsecured. *See Smith v. Creative Fin. Mgmt., Inc. (In re Va.-Carolina Fin. Corp.)*, 954 F.2d 193, 199 (4th Cir. 1992) ("As the plain language of § 547(b)(5) conveys, the court must focus, not on whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead upon whether the creditor would have received less than a 100% payout in a Chapter 7 liquidation.").

> have no reasonable alternative but to pay the subcontractor and then seek indemnification from the general contractor.
>
> To make any other assumption would defy reality. It would also penalize the lien creditor for accepting payments. *Ricotta v. Burns Coal & Bldg. Supply Co.*, 264 F.2d 749, 750 (2d Cir. 1959) ("The sole purpose of filing liens is to secure payment. Surely the receipt of payment itself should not be less secure than the lien which could have secured it.") It would also defy commercial reality. A subcontractor would not long remain in business if it made a practice of refusing payments from its general contractor in favor of enforcing lien rights against the underlying project. No one would hire such a subcontractor.

*Id.* at 103.

Here, similar to the subcontractor's acceptance of payment for release of its statutory lien rights, Defendant's acceptance of payment from Debtor (with Melrose Title Company and Defendant's state-court counsel serving as conduits) makes perfect sense. It would defy reality for Defendant to decline the payment and instead seek to foreclose on the Gardner Lane Property and leave Melrose Title Company and the third-party owner to assert resulting claims against Debtor. Unfortunately for Defendant, her reasonable approach to the situation does not absolve her of liability for a preference payment under bankruptcy law.

The bankruptcy court in *In re J.A. Jones, Inc.* explained that the "split in the case law on whether release of inchoate lien rights constitutes 'new value' is not as wide as it initially appears." *Id.* The key question is whether the soon-to-be-debtor owed anything to the third-party beneficiary of the preference payment against which an indemnity claim could be setoff.

> [T]he primary variant in the[] cases is whether, at the time of the preference payment, the owner still owed sufficient sums to the debtor on the project to permit a setoff against the owner's payment to the sub. If the owner still owes the debtor, then its indemnity claim can be setoff and is secured. . . . *If there is no debt to be setoff, however, then the owner's claim for indemnification is simply an unsecured debt and there is no 'new value.'*

*Id.*

In support of her § 547(c) argument, Defendant argued that but for the errors committed by Melrose Title Company in closing the sale of the Gardner Lane Property, Debtor never would have even received the funds that should have been paid to her to satisfy the judgment lien because Defendant would have received them from the closing agent.  Thus, Defendant argues, the "new value" Debtor received was the agreement by Melrose Title Company not to pursue any legal action against Debtor.  Specifically, she argued that "[h]ad the title company brought such legal claims against the Debtor, the Debtor's estate would surely have been reduced in legal fees and a probable judgment.  Additionally, the purchasers of the Debtor's real property could have presumably brought claims against the Debtor and the title company for the same transaction.  The Debtor's tendering of the monies to the title company avoided imminent litigation." [Doc. 32 at p. 3.]

Defendant's argument is based on the indirect transfer theory, which (unfortunately) does not apply to the facts before the Court.  Unquestionably, Melrose Title Company did not discover Defendant's judgment lien so that Defendant did not receive payment from the sale proceeds on the date of closing.  Based on Ms. Bundy's testimony, although the check to Debtor from the closing was payable to "Vicki S. Hill," Melrose Title Company's closing file included a copy of Debtor's Tennessee driver's license that reflected the name "Vicki Sue McGhee."  The closing file included no additional notes or explanation concerning the different names, and although there was speculation that it was because of the name differences, there was no explanation as to why Melrose Title Company did not discover Defendant's judgment lien through a title search before the closing in July 2018.

After Melrose Title Company mistakenly failed to pay the judgment lien from the closing proceeds and Defendant's attorney brought the mistake to its attention, Melrose Title Company,

through Ms. Bundy, contacted Debtor and demanded payment of the $16,672.00 from her. Ms. Bundy testified that during a routine closing, sellers are required to sign an affidavit that acknowledges the existence of any known liens as well as a compliance agreement providing that the sellers will cooperate with Melrose Title Company to correct any errors or mistakes discovered after the closing.[8] She also testified that Debtor was initially resistant to paying back the $16,672.00 to satisfy Defendant's judgment lien and that it took many calls to motivate Debtor to pay the funds without taking any legal action. Ms. Bundy acknowledged that Melrose Title Company could have pursued an action against Debtor for fraud and/or misrepresentation and/or to invalidate the purchase agreement and that Ms. Bundy relayed that information to Debtor, but she could not recall what specifically she told Debtor concerning possible legal action if Debtor did not pay Defendant so that the lien would be released.

As reflected by the Escrow Agreement executed on August 13, 2018 [Ex. 9], Debtor agreed to pay the $16,672.00, and she obtained a cashier's check from City Employees Credit Union for $16,072.00 that day [Ex. 5] and a cashier's check for $600.00 on August 22, 2018 [Ex. 6.] The Escrow Agreement does not, however, reflect that Melrose Title Company agreed to forego pursuing any legal action against Debtor in exchange for her payment to clear title to the Gardner Lane Property. Instead, the Escrow Agreement, which required Debtor to pay the funds to satisfy Defendant's judgment lien in exchange for a release of the judgment lien, indemnified Melrose Title Company rather than Debtor, and the only action against Debtor that Melrose Title Company agreed to forego concerned payment of any fees arising out of the Escrow Agreement.[9] Additionally, any purported "value" that Debtor might have received based on

---

[8] Neither of these documents was tendered as an exhibit.

[9] *See* Ex. 9 at ¶ 5 ("The Escrow Agent agrees not to charge any fees or expenses for its services hereunder unless Vickie disagrees about the disbursement of the Funds hereunder at which time Escrow Agent shall be entitled to

Melrose Title Company not pursuing legal action against her is speculative at best and an intangible benefit at the least.

More important for the indirect transfer theory, Debtor did not receive "new value" from Defendant when Defendant released the judgment lien on August 29, 2018, because Debtor no longer owned the Gardner Lane Property at the time of the transfers on August 13 and August 22, 2018, or on the date that the lien was released. As a matter of law, any claim Defendant had against Debtor on those dates was unsecured. *See Chancellor v. Jones Carpet & Rug Gallery, Inc. (In re Reliant Contractors, Inc.)*, 280 B.R. 705, 709 (Bankr. N.D. Fla. 2001) (holding that the creditor's release of liens was not "new value" because the debtor did not own the property against which the lien attached, the debtor having already sold the liened property).

Accordingly, even if Defendant had not waived the affirmative defense under § 547(c)(1), the Court finds that the facts do not establish that Debtor received new value for the payment to Defendant.

### III. REMEDIES

In his Complaint and his pretrial brief, Plaintiff seeks to avoid the transfers totaling $16,672.00 pursuant to § 547(b) and to preserve the avoided transfer for the benefit of Debtor's bankruptcy estate.[10] [*See* Doc. 1 at p. 3 ¶ 2; Doc. 23 at p.4.] The concepts of avoidance and its remedies "are distinct[, and w]hether avoidance of a transfer (and automatic preservation under § 551) will make the estate whole depends largely on whether the interest transferred is possessory . . . or nonpossessory[.]" *Moyer v. Rosich (In re Rosich)*, 570 B.R. 278, 282 (Bankr. W.D. Mich.

---

charge all reasonable and customary fees and expenses (including reasonable attorneys' fees and expenses) charged by Escrow Agent for its services performed pursuant to this Escrow Agreement.") (emphasis added).

[10] The parties' Written Report, Rule 26(f), filed July 20, 2020 [Doc. 8], recites Plaintiff's cause of action only under § 547(b) and states that 'Defendant denies that the Plaintiff is entitled to any relief as related to the Complaint under 11 U.S.C. § 564(b)." The Bankruptcy Code contains no section 564(b). Similar errors exist in the agreed Pretrial Order prepared and submitted by the parties, which states erroneously that "Plaintiff seeks damages pursuant to 11 U.S.C. § 105, 362(a) and 525(b)." [Doc. 10.]

2017); *see Suhar v. Burns (In re Burns)*, 322 F.3d 421, 425 (6th Cir. 2002) (explaining that the first concept, avoidance, allows trustees to nullify transfers that deplete the bankruptcy estate, but "[r]ecovery, the second concept, is a statutory mechanism through which property may be returned to the estate"). "In the case of creditors who have possessory interests in the debtor's property, the trustee will generally have to pursue recovery, because mere avoidance would not bring the property back into the estate's possession. In contrast, in cases involving creditors . . . who have nonpossessory interests in the debtor's property, trustees will generally not have to seek recovery." *In re Burns*, 322 F.3d at 428.

"[M]ere avoidance under § 544(b) without recovery under § 550 is inadequate. Rather, the court regards a decision to avoid a transfer as merely declaratory relief establishing the predicate for possible recovery or money judgment under § 550, or perhaps relief under § 551, depending on the circumstances of a particular transfer." *In re Rosich*, 570 B.R. at 282. "[T]he fact that avoidance is a necessary precondition to § 550 recovery does not imply that avoidance is a sufficient condition for § 550 recovery or that avoidance automatically triggers § 550 recovery." *In re Burns*, 322 F.3d at 427. "In the case of creditors who have possessory interests in the debtor's property, the trustee will generally have to pursue recovery, because mere avoidance would not bring the property back into the estate's possession." *Id*. at 428; *see also Hirsch v. Gersten (In re Centennial Textiles, Inc.),* 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998) ("Section 550(a) is intended to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred.").

Here, although Defendant holds a possessory interest in the funds, Plaintiff has asked to *preserve* the avoided transfer of $16,672.00 for the benefit of the estate rather than to *recover* the property transferred for the benefit of the estate pursuant to 11 U.S.C. § 550. This is clearly an

error because preservation of the interest under § 551 (which occurs automatically for nonpossessory interests that are avoided) would render nothing more than a declaratory judgment that the transfers were avoided but would not allow Plaintiff to recover the $16,672.00 from Defendant for distribution.  Nonetheless, notwithstanding the incorrect citation and request for relief in the Complaint, to avoid the incurrence of additional administrative expenses by requiring Plaintiff to amend the Complaint, which would further deplete the amounts payable to unsecured creditors (including Defendant), because the transfer of money involves a purely possessory interest, the Court, pursuant to Federal Rule of Civil Procedure 15(b), to conform to the evidence presented at trial, will treat Plaintiff's request to have been made for recovery under § 550(a) rather than for preservation under § 551.

Although Defendant will be required to turn over the $16,672.00 to Plaintiff, she is not entirely without recourse in this bankruptcy case.  First, the Court declines to grant Plaintiff's request for "statutory interest pursuant to 28 U.S.C. § 1961 for prejudgment interest after demand made on November 20, 2019." [Doc. 23 at p. 4.]  The Court finds no basis for any award of pre-judgment interest, nor does § 1961 require such interest be assessed against the avoided transfer.  Plaintiff is entitled to avoidance of the $16,672.00 transfers, and Defendant will be required to pay that amount to Plaintiff as required by § 550.  That amount sufficiently restores Debtor's bankruptcy estate to the same financial condition but for the avoided transfers.

Additionally, Defendant will be allowed to file a claim in Debtor's bankruptcy case for the amount of the transfers.  11 U.S.C. § 502(h) provides in material part that "[a] claim arising from the recovery of property under section . . . 550 . . . of this title shall be determined, and shall be allowed under subsection (a) . . . of this section[.]"  Because the $16,672.00 transfer avoided under § 547(b) will be recovered by Plaintiff pursuant to § 550(a), the Court will include in its

judgment that Defendant's claim is deemed allowed under 11 U.S.C. § 502(h) such that Defendant will be included in the distribution of assets to unsecured creditors and will, in turn, receive a pro rata share of the amounts recovered from her by Plaintiff net of administrative expenses.

### IV.  SUMMARY

The facts of this adversary proceeding have presented the Court with a series of unfortunate events for Defendant, which exhibit the frustrating truth that sometimes the law produces seemingly unjust results.  Defendant took every appropriate action to preserve her rights under the law by obtaining a judgment, recording the judgment, and seeking to enforce her rights to the proceeds from the sale of the Gardner Lane Property to which her judgment lien had attached.  Indeed, Defendant reached out to her attorney when she learned that Debtor was offering the property for sale, and when it was discovered that Defendant's judgment lien was not paid by proceeds from the closing because Debtor did not disclose the lien and Melrose Title Company did not discover it, Defendant's attorney took the appropriate, necessary steps on Defendant's behalf by contacting Melrose Title Company and obtaining payment for Defendant.  On receipt of that payment, Defendant then complied with her duty to release the judgment lien because she had been paid in full, and it is only because Debtor sought bankruptcy protection before August 23, 2019, that any of these issues arose.  Were the Court authorized to exercise its inherent equitable powers afforded by 11 U.S.C. § 105(a), this would be the type of case for such relief based on the facts.  Unfortunately, § 105(a) does not allow the Court to contravene or provide relief that is contrary to any express statutory provision.  Here, § 547(b) governs.

Because Plaintiff has proved the elements of § 547(b), because Defendant waived affirmative defenses under § 547(c), and because none of those statutory defenses apply in any

event, Plaintiff is entitled to a judgment avoiding the August 13, 2018 transfer in the amount of $16,072.00 and the August 22, 2018 transfer in the amount of $600.00 to Defendant. Plaintiff is entitled to recover the sum of $16,672.00 for the benefit of Debtor's bankruptcy estate pursuant to § 550(a).

      A Judgment consistent with this Memorandum will be entered.

FILED: June 24, 2021

                                          BY THE COURT

                                          *s/ Suzanne H. Bauknight*

                                          SUZANNE H. BAUKNIGHT
                                          UNITED STATES BANKRUPTCY JUDGE